IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRIAN SHAUGHNESSY, individually and on behalf of his minor child A.S., | ) ) ) |
| | ) |
| Plaintiffs, | ) ) |
| | ) |
| vs. | ) |
| | ) |
| THE STATE OF HAWAII, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

CIVIL NO. 09-00569 JMS/BMK

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING LEAVE TO AMEND

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING LEAVE TO AMEND**

## I.  INTRODUCTION

Plaintiffs Brian Shaughnessy ("Shaughnessy"), individually and on behalf of his adopted minor child A.S., (collectively, "Plaintiffs") brought this action alleging various claims related to Plaintiffs' failure to timely receive over $70,000 in federal adoption assistance funds.  Plaintiffs, both individuals with disabilities, contend that Hawaii's Department of Human Services ("DHS") negligently failed to inform Plaintiffs of their right to adoption assistance and discriminated against Plaintiffs on the basis of race and disability.

Defendants State of Hawaii, Hawaii Governor Linda Lingle ("Lingle"), DHS Director Lillian Koller ("Koller"), Gail Tomita ("Tomita"),

Beverly Nakamoto ("Nakamoto"), Amy Tsark ("Tsark"), Rosaline Tupou

("Tupou"), and Barbara Service ("Service") (collectively, "Defendants") now bring

a Motion to Dismiss ("Defendants' Motion").  Defendants contend that dismissal is

appropriate because, among other reasons, Defendants are immune from suit

pursuant to the Eleventh Amendment and Plaintiffs fail to state a claim for

discrimination.

Based on the following, the court GRANTS in part and DENIES in

part Defendants' Motion and grants Plaintiffs leave to amend.

## II.  <u>BACKGROUND</u>

**A.     Factual Background**

In 2001, Shaughnessy and his late wife fostered and then adopted A.S.

First Am. Compl. ("FAC") ¶ 11.  At that time, Shaughnessy and his wife knew that

A.S. was at risk for significant and multiple disabilities because his birth mother

used crystal-methamphetamine.  *Id*.  Shaughnessy states that he and his wife

"agreed to adopt [A.S.] with the understanding he would come to our home as a

foster child, that we would receive compensation and assistance and that after he

was adopted we would receive [] Adoption Assistance if he exhibited 'at-risk' []

disabilities.'" FAC Shaughnessy Decl. ¶ 9.  A.S. now has disabilities including

developmental delays, speech delays, Attention Deficit Hyperactive Disorder,

physical delays, Aspergers Syndrome, Aggression, and other conditions. *Id.* ¶ 13.

As an at-risk adopted child, A.S. became eligible for adoption assistance funds on his first birthday through the Adoption Assistance and Child Welfare Act of 1980 (the "AACWA"), 42 U.S.C. §§ 620-628, 670-679a. *Id.* ¶ 11. Plaintiffs did not receive this assistance, however, because of Defendants' allegedly negligent decision to close A.S.'s case file without contacting Shaughnessy and his wife. *Id.* ¶ 12.

On or before January 2007, Shaughnessy contacted Defendants about assistance for A.S. *Id.* ¶ 15. Shaughnessy alleges that Defendants ignored him both at that time and in March 2007 when Shaughnessy again contacted them. *Id.* In September 2007, after Shaughnessy contacted Defendants for at least a third time, Defendants sent a child/family social worker focused on "low risk" children to meet with Plaintiffs. *Id.* ¶ 17. The "low risk" social worker met with Plaintiffs weekly, but allegedly "never procured any assistance [for Plaintiffs] nor made mention of Adoption Assistance despite her knowledge that [Shaughnessy] had exhausted all monies to provide child care and other needs of A.S." *Id.* After several months, Defendants assigned a different child/family social worker focused on "moderate risk" children to work with Plaintiffs to procure assistance and funding. *Id.* Plaintiffs allege that the "moderate risk" social worker was not

reliable, cancelled half of her appointments with Plaintiffs, and failed to mention adoption assistance.  *Id.* ¶ 18.

In July 2008, Shaughnessy required hospitalization for a severe illness and A.S. was temporarily placed in foster care.  At that time, the "moderate risk" social worker allegedly "came to the hospital, stood at the foot of [Shaughnessy's] hospital bed and, with hands on her hips, demanded, 'Why aren't you taking care of this?'"  *Id.* ¶¶ 19, 20.  Another DHS employee allegedly told Shaughnessy in reference to A.S.'s placement in foster care that "[i]f you were the right race, this would have never happened."  *Id.* ¶ 24.  Additionally, Tomita, a DHS Child Welfare Supervisor, allegedly told Shaughnessy that "[i]f you do this (become sick and require hospitalization) your son will be taken from you."  *Id.* ¶ 25 (parentheses in original).  Shaughnessy alleges that Tomita repeated this threat several times.  *Id.* ¶ 26.

During Shaughnessy's July 2008 hospitalization, Nakamoto, a DHS Child Welfare Supervisor, discussed adoption assistance funds with Shaughnessy. *Id.* ¶ 21.  Accordingly to Shaughnessy, Nakamoto was the first person to mention adoption assistance to him.  *Id.*  At some point thereafter, Service, also a DHS employee, allegedly told Shaughnessy that DHS "dropped the ball" regarding Plaintiffs' rights to adoption assistance and improperly closed A.S.'s case file.  *Id.*

¶ 27.

On August 6, 2009, Shaughnessy sent a letter to DHS demanding back payments of adoption assistance funds in the amount of $79,128.  *Id*. ¶ 28; *Id*. Ex. 1.  On October 19, 2009, Shaughnessy received a response from Tsark, the acting administrator of DHS, stating that Shaughnessy would receive $74,411.32 -- the amount he requested less an overpayment DHS contends Shaughnessy received in foster care funds.  *Id*. ¶ 29; *Id*. Ex. 2.  The October 19, 2009 letter states that the funds "will be issued to [Shaughnessy] over the next two months."  *Id*. ¶ 29; *Id*. Ex. 2.  Shaughnessy did not receive any payments, however, and was told after contacting Child Welfare Services that he would not be paid.  *Id*. ¶ 30.  Child Welfare Services informed Shaughnessy that he would not receive payment because Plaintiffs receive Social Security survivorship benefits, which Child Welfare Services contended disqualified Plaintiffs for adoption assistance.  *Id*. ¶ 31.

Plaintiffs filed the present action seeking various forms of relief, including $79,128 in adoption assistance.  Defendants have since paid Plaintiffs for the back adoption assistance payments.  Plaintiffs now seek interest and damages.

**B.     Procedural Background**

Plaintiffs filed the Complaint on December 2, 2009 and the FAC on March 11, 2010.  Against all Defendants, Plaintiffs allege Hawaii state law claims for negligence (Count I), breach of contract (Count II), negligent infliction of emotional distress ("NIED") (Count III), and intentional infliction of emotional distress ("IIED") (Count IV).  In addition, against all Defendants, Plaintiffs allege federal claims for race-based discrimination in violation of 42 U.S.C. §§ 1981 and 1982 (Count V), and disability-based discrimination in violation of the Medicaid Act, 42 U.S.C. § 1396, *et seq.*, the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* (Count VI).  In Count VI, Plaintiffs also allege 42 U.S.C. § 1983 claims based on the AACWA and the due process clauses of the Fifth and Fourteenth Amendments.

On March 31, 2010, Defendants filed their Motion.  On May 14, 2010, Plaintiffs filed an Opposition and on May 24, 2010, Defendants filed a Reply.  A hearing was held on June 7, 2010.  At the hearing, Plaintiffs clarified the provisions of the AACWA at issue and, because this information was previously unclear to Defendants, the court permitted Defendants to file a supplemental memorandum addressing Plaintiffs' AACWA claims.  Defendants filed their

supplemental memorandum on June 14, 2010.

### III. <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Id.* at 1950.

7

# IV.  DISCUSSION

Defendants contend that dismissal is appropriate because (1) Defendants are immune from suit pursuant to the Eleventh Amendment; (2) Plaintiffs fail to state a claim pursuant to the Medicaid Act, the ADA , the Rehabilitation Act, or § 1983 upon which relief can be granted; and (3) Plaintiffs' § 1983 claims are time barred.  The court addresses the capacities in which Defendants are being sued and then examines these arguments in turn.

## A.    Defendants' Capacities

As an initial matter, the court must determine in what capacity Defendants are being sued.  Plaintiffs do not specify whether Defendants are sued officially or individually, or both.[1]  When it is unclear whether defendants are sued in official or individual capacities, the court must examine "[t]he course of proceedings" to determine the capacity in which each defendant is sued.  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); Fed. R. Civ. P. 8(e) (requiring that pleadings "be construed so as to do justice").

Given the course of the proceedings and the agreement of the parties at the June 7, 2010 hearing, the court construes the FAC to allege claims against

---

[1]  The caption to the Complaint states that Defendants were all sued in their official and individual capacities.  The caption to the FAC is silent, however, as to capacity.

8

Tomita, Nakamoto, and Service in both their official and individual capacities. *See* FAC ¶¶ 21, 25, 26, 27, 30 (asserting that these Defendants personally made statements allegedly harmful to Plaintiffs). The court construes the FAC to allege exclusively official capacity claims, however, as to Lingle, Koller, Tsark, and Tupoa ("Official Capacity Defendants") because Plaintiffs do not allege that Official Capacity Defendants personally participated in any of the counts of the FAC.

## B.     Eleventh Amendment Immunity

### *1.     Legal Framework*

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Pursuant to the Eleventh Amendment, states cannot be sued in federal court, whether by their own citizens or citizens of another state. *Papasan v. Allain*, 478 U.S. 265, 275 (1986); *Hans v. Louisiana*, 134 U.S. 1 (1890). Similarly, a suit for damages against state officials, in their official capacity, constitutes a suit against the state itself and therefore is barred by the Eleventh Amendment. *Kentucky,* 473 U.S. at 166-67. Although state officials are

literally persons, "a suit against a state official is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). "As such, [a suit against a state official] is no different from a suit against the State itself." *Id*.

States and state officials may, however, be held to answer for damages in federal court in three limited circumstances: where the state waives its sovereign immunity, where Congress expressly abrogates state sovereign immunity with respect to a particular federal cause of action, and where Congress creates a statutory scheme under which states are the only possible defendants. *Alaska v. EEOC*, 564 F.3d 1062, 1081-82 (9th Cir. 2009); *see also Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1991) (noting that Eleventh Amendment immunity is waivable); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that Congress may abrogate Eleventh Amendment immunity in certain circumstances).

Further, *Ex parte Young*, 209 U.S. 123, 159-60 (1908), held that the Eleventh Amendment does not bar a suit to enjoin the unconstitutional actions of a state official. *Young* held that a state official who acts in violation of federal law, though sued in his or her official capacity, is "stripped of his official or

representative character" because "the state has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Id.* The Supreme Court has limited the *Young* exception to suits for prospective relief against ongoing violations of federal law. *Papasan*, 478 U.S. at 277-78. Thus, relief that "serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment[.]" *Id.* at 278 (citing *Milliken v. Bradley*, 433 U.S. 267, 289-90 (1977)).

### 2. *Plaintiffs' State Law Claims*

Plaintiffs assert state law claims for negligence (Count I), breach of contract (Count II), NIED (Count III), and IIED (Count IV) against all Defendants.

At the June 7, 2010 hearing, the parties agreed that Plaintiffs' state law claims against the State of Hawaii and Defendants in their official capacities are barred by Hawaii's sovereign immunity. Although Hawaii has waived its sovereign immunity as to some state tort and statutory claims, it has done so solely with respect to state court actions. Hawaii Revised Statute ("HRS") § 662-3 states that "the circuit courts of the State and . . . the State district courts shall have original jurisdiction of all tort actions on claims against the state." HRS § 661-1 similarly grants the state courts jurisdiction over "[a]ll claims against the State founded upon any statute of the State[.]" Nothing in the language of these statutes

11

suggests that Hawaii intended to subject itself to suit in federal court.  Moreover, the Hawaii legislature has specifically declared that it intended §§ 662-3 and 661-1 to extend jurisdiction to state courts, but not to federal courts.  *See* Act 135 of 1984 Session Laws of Hawaii; *see also Office of Hawaiian Affairs v. Dep't of Educ.*, 951 F. Supp. 1484, 1491 (D. Haw. 1996) (discussing both plain language and legislative intent and holding that §§ 661-1 and 662-2, which waived the state's immunity for torts committed by its employees, do not waive the State's Eleventh Amendment immunity).  Official Capacity Defendants are therefore entitled to Eleventh Amendment immunity on these state claims.

Accordingly, the court DISMISSES WITH PREJUDICE Counts I, II, III, and IV against the State of Hawaii, Lingle, Koller, Tsark, and Tupoa as well as Tomita, Nakamoto, and Service in their official capacities.

### 3.     *Plaintiffs' Federal Law Claims*

In Counts V and VI, Plaintiffs "seek a declaration" that Defendants violated various federal statutes.  FAC ¶¶ 53, 54.  As an initial matter, the *Ex Parte Young* exception for ongoing violations of federal law does not apply to Plaintiffs' claims in Counts V and VI because Plaintiffs have now received their claimed adoption assistance payments.  As a result, Plaintiffs do not allege an ongoing violation of federal law.

Because Plaintiffs do not allege ongoing violations of federal law, and because the State of Hawaii has not waived its immunity in this case and Defendants have timely asserted their Eleventh Amendment immunity, Plaintiffs' federal law claims cannot proceed unless the statutes at issue override the Hawaii's Eleventh Amendment immunity.  The court therefore addresses Eleventh Amendment immunity as it relates to Count V and Count VI in turn.

         *a.*    *Count V*

In Count V, Plaintiffs assert federal law claims for race-based discrimination in violation of 42 U.S.C. §§ 1981 and 1982.[2]

Sections 1981 and 1982 do not abrogate the states' Eleventh Amendment immunity.  Section 1981 guarantees to all persons the equal right to "enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all law and proceeding[.]"  Section 1982 guarantees to all persons the rights to "inherit, purchase, lease, sell, hold, and convey real and personal property."  By their terms, neither of these statutes expressly abrogates states' sovereign immunity.

Further, courts have consistently held -- and at the hearing, the parties

---

[2] Although Count V cites 42 U.S.C. §§ 1981 and 1983, the parties agreed at the hearing that Count V alleges violations of 42 U.S.C. §§ 1981 and 1982, not §§ 1981 and 1983.

agreed -- that the Eleventh Amendment bars §§ 1981 and 1982 suits against the states and state officials acting in their official capacities.  *Pittman v. Oregon, Employment Dep't*, 509 F.3d 1065, 1074 (9th Cir. 2007) (finding that § 1981 does not contain a cause of action against states); *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) (holding that the Los Angeles Community College District was entitled to Eleventh Amendment immunity from the plaintiff's § 1981 claims); *Ross v. Alabama*, 893 F.Supp. 1545, 1550-51 (M.D. Ala. 1995) (collecting cases and finding that "under § 1982, the Eleventh Amendment is in full force and effect").

The court therefore DISMISSES WITH PREJUDICE Count V against the State of Hawaii, Lingle, Koller, Tsark, and Tupoa as well as Tomita, Nakamoto, and Service in their official capacities.

　　b.　Count VI

Although Count VI is worded unclearly, the court construes Count VI, in part, as a § 1983 claim based on the Medicaid Act, the AACWA, and the Fifth and Fourteenth Amendments.[3]

Plaintiffs' § 1983 claims in Count VI against the State of Hawaii and

---

[3] In addition to these claims, Count VI appears to state claims pursuant to Title II of the ADA and the Rehabilitation Act.  Defendants have not sought dismissal of Plaintiffs' ADA and Rehabilitation Act claims based on Eleventh Amendment immunity.

Defendants sued in their official capacities are barred by Eleventh Amendment immunity.  The Eleventh Amendment bars § 1983 suits against the states and state officials acting in their official capacities.  *Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (holding that § 1983 does not override a state's Eleventh Amendment immunity); *Cerrato v. S.F. Cmty. Coll. Dist.*, 26 F.3d 968, 972, 975 (9th Cir. 1994) (holding that the Eleventh Amendment bars §§ 1983, 1985, and 1986 claims against the states).

Accordingly, the court DISMISSES WITH PREJUDICE the § 1983 claims in Count VI against State of Hawaii, Lingle, Koller, Tsark, and Tupoa as well as Tomita, Nakamoto, and Service in their official capacities.

## C.    Failure to State a Claim upon Which Relief Can Be Granted

As for the claims not barred by Eleventh Amendment immunity, Defendants contend that Plaintiffs fail to state a claim upon which relief can be granted for claims pursuant to the Medicaid Act, race-based discrimination, disability-based discrimination, and § 1983.  The court addresses the arguments in turn.

### 1.    *The Medicaid Act*

Count VI alleges violations of the Medicaid Act.  At the hearing, Plaintiffs agreed that the FAC contains insufficient information to state a claim

15

pursuant to the Medicaid Act.  The court therefore DISMISSES WITHOUT

PREJUDICE Plaintiffs' Medicaid Act claim.  If Plaintiffs amend their Medicaid

Act claim, Plaintiffs are directed to state specific provisions of the Medicaid Act

and explain how these provisions apply to Plaintiffs' claims.

### 2. *Plaintiffs' Race-Based Discrimination Claims in Count V*

Defendants contend that Plaintiffs fail to state a claim for race-based

discrimination in Count V.  The court agrees.

Plaintiffs allege only that "Defendants deliberately did not inform

Plaintiffs of their eligibility for [] Adoption Assistance . . . . [and] Shaughnessy

believes this to be prohibited discrimination based on his race and disability."

FAC ¶ 53.  Plaintiffs' one other allegation concerning his race concerns A.S.'s

placement in foster care, not Plaintiffs' failure to be informed of adoption

assistance.  *See id*. ¶ 24.

Plaintiffs thus provide only "an unadorned, the-defendant[s]-

unlawfully-harmed-me accusation" of the type found insufficient in *Iqbal*, 129 S.

Ct. at 1949.  *Iqbal* held that a plaintiff's allegation that defendants subjected him to

"to harsh conditions of confinement 'as a matter of policy, solely on account of

[his] religion, race, and/or national origin and for no legitimate penological

interest'" were no more than "bare assertions" insufficient to satisfy Rule 8.

16

Likewise, Plaintiffs' unadorned racial discrimination allegations, as currently pled, fail to state a claim.  Accordingly, the court DISMISSES Count V WITHOUT PREJUDICE as to the remaining defendants -- that is, Tomita, Nakamoto, and Service in their individual capacities.

### 3.    *Plaintiffs' ADA and Rehabilitation Act Claims in Count VI*

Defendants contend that Plaintiffs' ADA and Rehabilitation Act claims in Count VI should likewise be dismissed for failure to state a claim upon which relief can be granted.  The court agrees.

Title II of the ADA "prohibit[s] discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).  The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).  "There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

> To establish a violation of Title II of the ADA, a plaintiff
> must show that (1) [he] is a qualified individual with a
> disability; (2) [he] was excluded from participation in or
> otherwise discriminated against with regard to a public

entity's services, programs, or activities; and (3) such
exclusion or discrimination was by reason of [his]
disability.  To establish a violation of § 504 of the RA, a
plaintiff must show that (1) [he] is handicapped within
the meaning of the RA; (2) [he] is otherwise qualified for
the benefit or services sought; (3) [he] was denied the
benefit or services solely by reason of [his] handicap; and
(4) the program providing the benefit or services receives
federal financial assistance.

*Lovell*, 303 F.3d at 1052 (internal citations omitted).

Although Plaintiffs clearly allege that they are qualified individuals
with disabilities who failed to receive adoption assistance, the FAC does not allege
that Plaintiffs were discriminated against or denied this benefit *by reason of their
disabilities*.  Instead, Plaintiffs allege only that DHS "dropped the ball" regarding
Plaintiffs' rights to adoption assistance and improperly closed A.S.'s case file.
FAC ¶ 27.  Allegations in the FAC suggesting that Defendants may have been
motivated by Plaintiffs' disabilities -- including the statements allegedly made by
various DHS employees to Shaughnessy during his hospitalization, FAC ¶¶ 19, 20,
24, 25, 26 -- all concern A.S.'s placement in foster care.  None of these alleged
statements concerns Plaintiffs' failure to receive adoption assistance.  Further,
although Plaintiffs allege that Defendants began improperly denying them adoption
assistance in 2002, the alleged statements were not made until 2008.  The FAC
thus contains no factual allegations to support the legal conclusion that Defendants

denied Plaintiffs adoption assistance by reason of Plaintiffs' disabilities.

Notably, too, Plaintiff cannot state an ADA claim for relief against Tomita, Nakamoto, and Service as individuals.  The ADA defines "public entity" in relevant part as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131(1)(A)-(B).  The term "public entity" does not include individuals.  *Hardwick v. Curtis Trailers, Inc.*, 896 F. Supp. 1037, 1038-39 (D. Or. 1995) (finding that individual liability is precluded under ADA Title II) (citing *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583 (9th Cir. 1993)); *see also Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA . . . .").  Amendment of Plaintiffs' ADA and Rehabilitation Act claims against individual defendants would therefore be futile.

Accordingly, the court finds that Plaintiffs have failed to state a claim upon which relief can be granted under the ADA or the Rehabilitation Act.  The court DISMISSES WITH PREJUDICE Plaintiffs' ADA and Rehabilitation Act claims as to to Tomita, Nakamoto, and Service in their individual capacities; the court DISMISSES WITHOUT PREJUDICE as to State of Hawaii, Lingle, Koller,

Tsark, and Tupoa as well as Tomita, Nakamoto, and Service in their official

capacities.

### 4.    *Plaintiffs' § 1983 Claims Based on the AACWA in Count VI*

Although it is somewhat unclear from the FAC, the parties agreed at

the hearing that Plaintiffs' AACWA claims are based on 42 U.S.C.

§§ 673(a)(1)(A) and (a)(3).  Section 673(a)(1)(A) provides that "[e]ach State

having a plan approved under this part shall enter into adoption assistance

agreements . . . with the adoptive parents of children with special needs."[4]  Section

673(a)(3) provides that "[t]he amount of payments to be made . . . shall be

determined through agreement between the adoptive parents and the State or local

agency administering the program under this section . . . ."  Defendants contend

Plaintiffs' AACWA claims must fail because there is no implied right of action

---

[4]  42 U.S.C. § 675(3) defines "adoption assistance agreement:"

> The term "adoption assistance agreement" means a written agreement, binding on the parties to the agreement, between the State agency, other relevant agencies, and the prospective adoptive parents of a minor child which at a minimum (A) specifies the nature and amount of any payments, services, and assistance to be provided under such agreement, and (B) stipulates that the agreement shall remain in effect regardless of the State of which the adoptive parents are residents at any given time.  The agreement shall contain provisions for the protection (under an interstate compact approved by the Secretary or otherwise) of the interests of the child in cases where the adoptive parents and child move to another State while the agreement is effective.

under either §§ 673(a)(1)(A) or (a)(3).  Further, Defendants contend that even if there is an implied right of action under either section, neither section supports a claim for money damages.

Courts have found that some provisions of the AACWA create a federally enforceable right while other provisions do not.  *Compare ASW v. State of Oregon*, 424 F.3d 970, 978 (9th Cir. 2005) (finding that § 673(a)(3) creates a federally enforceable right), *with Suter v. Artist M.*, 503 U.S. 347, 363 (1992) (finding that 42 U.S.C. § 671(a)(15) -- which provides that states shall make "reasonable efforts" to prevent removal of children from their homes -- does not create an enforceable federal right).  Whether Plaintiffs have an enforceable right under both of the provisions at issue here is ultimately immaterial, however, because Plaintiffs are exclusively seeking damages.[5]

*Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981), held that "legislation enacted pursuant to [Congress'] spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions."  As a result of the contractual nature of

---

[5] Although Plaintiffs assert in the FAC that they seek a "declaration" that Defendants violated various federal statutes, a declaration "in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court . . . ."  *Green v. Mansour*, 474 U.S. 64, 73 (1985).  Further, Plaintiffs stated at the hearing that they are now pursuing only back payment of interest and other damages.

spending clause legislation, *Pennhurst* "precludes the award of damages for unintentional violations of statutes . . . enacted pursuant to Congress's spending authority." *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 966 (9th Cir. 2010) (citations omitted); *see also Suter*, 503 U.S. at 356 (noting that Congress adopted the AACWA pursuant to its spending power).  "Private damages actions are available only where recipients of federal funding had adequate notice that they could be liable for the conduct at issue." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640 (1999).  "The point of not permitting monetary damages for an unintentional violation is that the receiving entity of federal funds lacks notice that it will be liable for a monetary award." *Franklin v. Gwinnet County Pub. Sch.*, 503 U.S. 60, 74 (1992) (finding that a school district's failure to stop harassment known to the district was intentional discrimination for which damages could be recovered).

In the present case, Plaintiffs' AACWA claims are based solely on allegations of negligence and other unintentional conduct.  Plaintiffs contend that Defendants "dropped the ball" in failing to pay adoption assistance to Plaintiffs. FAC ¶ 27.  Plaintiffs also allege that Defendants later improperly withheld adoption assistance based on the belief that Plaintiffs could not collect both Social Security benefits and adoption assistance payments.  FAC ¶ 31.  As explained

above, all of the discriminatory statements in the FAC concern A.S.'s placement in foster care and not Plaintiffs' failure to receive adoption assistance.  As a result, the prohibition in *Pennhurst* applies and the court finds that Plaintiffs' AACWA claim does not support a claim for damages.

Because Plaintiffs seek damages exclusively, the court DISMISSES WITHOUT PREJUDICE Plaintiffs' § 1983 claims based on the AACWA against Tomita, Nakamoto, and Service in their individual capacities.[6]

## D.      Statute of Limitations

Defendants contend that Plaintiffs' § 1983 claims are time barred because Shaughnessy knew of his now complained-of injury for failure to receive adoption assistance in 2001, well before he filed the present action in 2009. Defendants imputed this knowledge to Shaughnessy based on his statement that he and his wife "agreed to adopt [A.S.] with the understanding . . . . that after he was adopted we could receive [] Adoption Assistance if he exhibited 'at-risk' [] disabilities."  FAC Shaughnessy Decl. ¶ 9.

In § 1983 actions, courts apply the forum state's statute of limitations for personal injury actions and that state's tolling provisions.  *Canatella v. Van de*

---

[6] Based on the allegations set forth in the FAC, it appears that amendment of Plaintiffs' § 1983 claims based on the AACWA may be futile.  Nevertheless, Plaintiffs may amend these claims if they can allege facts that show Defendants *intentionally* violated Plaintiffs' rights pursuant to the AACWA.

23

*Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007).  As a result, Plaintiff's § 1983 claims

are subject to the two-year statute of limitations set forth in HRS § 657-7, which

provides that "[a]ctions for recovery of compensation for damage or injury to

persons or property shall be instituted within two years after the cause of action

accrued, and not after . . . ."  Although this court looks to state law to determine the

applicable statute of limitations, the determination of when a cause of action begins

to accrue turns on federal law.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he

accrual date of a § 1983 cause of action is a question of federal law that is *not*

resolved by reference to state law.").  Under federal law, a cause of action accrues

when the "plaintiff knows or had reason to know" of the injury, which is the basis

for the claim.  *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992); *see also*

*Wallace*, 549 U.S. at 391 (stating claim accrues when wrongful act results in

damages).

      A claim may be dismissed under Rule 12 as "barred by the applicable

statute of limitations only when 'the running of the statute is apparent on the face

of the complaint.'"  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592

F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d

992, 997 (9th Cir. 2006); *see also Supermail Cargo, Inc. v. United States*, 68 F.3d

1204, 1206-07 (9th Cir. 1995) ("[A] complaint cannot be dismissed unless it

24

appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." (quotations and citations omitted)).  Stated in more general terms, judgment on the pleadings is proper only if it is clear "on the face of the pleadings that no material issue of fact remains to be resolved;" if the district court must go beyond the pleadings to resolve an issue, "[j]udgment on the pleadings is improper[.]"  *Hal Roach Studies, Inc. v. Richard Feiner and Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (internal citations omitted).

Shaughnessy's Declaration is not as telling as Defendants suggest. Although "Adoption Assistance" is capitalized in Shaughnessy's Declaration, the Declaration is nevertheless unclear as to whether Shaughnessy had knowledge of his eligibility for the specific adoption assistance now at issue -- that is, the assistance available pursuant to the AACWA.[7]  Defendants therefore have not shown that Shaughnessy knew or had reason to know of his eligibility to the assistance now at issue when he adopted A.S.  Accordingly, the court DENIES Defendants' Motion as to the running of the statute of limitations.

---

[7] Indeed, Plaintiffs now contend that "[t]he phrasing and the inappropriate capitalization of the word 'adoption' and 'assistance' . . . are a mistake . . . ." Pls.' Opp'n 15.  Although the court does not look outside the FAC and its attachments (including Shaughnessey's Declaration), Plaintiffs' effort to clarify Shaughnessy's Declaration confirms the court's finding that accrual of the statute of limitations is not clear on the face of the FAC.

# V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS in part and DENIES in part Defendants' Motion.  Counts I, II, III, IV, and V against the State of Hawaii, Lingle, Koller, Tsark, and Tupoa, as well as Tomita, Nakamoto, and Service in their official capacities are DISMISSED WITH PREJUDICE.  Plaintiffs' § 1983 claims in Count VI against the State of Hawaii, Lingle, Koller, Tsark, and Tupoa, as well as Tomita, Nakamoto, and Service in their official capacities are also DISMISSED WITH PREJUDICE.  Additionally, Plaintiffs' ADA and Rehabilitation Act claims in Count VI against Tomita, Nakamoto, and Service in their individual capacities are DISMISSED WITH PREJUDICE.

The court DISMISSES WITHOUT PREJUDICE Plaintiffs' ADA and Rehabilitation Act claims in Count VI against the State of Hawaii, Lingle, Koller, Tsark, and Tupoa, as well as Tomita, Nakamoto, and Service in their official capacities.  The court also DISMISSES WITHOUT PREJUDICE Plaintiffs' § 1983 claims based on the AACWA against Tomita, Nakamoto, and Service in their individual capacities.  Plaintiffs are granted leave until **August 1, 2010** to file a Second Amended Complaint.

The claims remaining are:

    1.    Count I (negligence) against Tomita, Nakamoto, and Service in their

individual capacities.

2.      Count II (breach of contract) against Tomita, Nakamoto, and Service in their individual capacities.

3.      Count III (NIED) against Tomita, Nakamoto, and Service in their individual capacities.

4.      Count IV (IIED) against Tomita, Nakamoto, and Service in their individual capacities.[8]

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 24, 2010.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Shaughnessy v. Hawaii, et al.*, Civ. No. 09-00569 JMS/BMK, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Granting Leave to Amend

---

[8] If Plaintiffs do not timely amend the Complaint to allege federal law claims, the court may at that time examine whether it will exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.